# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

JAMAAL ALI,

Plaintiff,

- v -

Civ. No. 9:12-CV-0104
(DNH/RFT)

DR. MICHAEL F. HOGAN, *Commissioner, New York State Office of Mental Health*, DR. DONALD SAWYER, *Executive Director*, DR. TERRI MAXYMILLIAN, *Sex Offender Treatment Program Director*, *Central New York Psychiatric Center*,

Defendants.

**APPEARANCES:**                              **OF COUNSEL:**

**JAMAAL ALI**
Plaintiff, *Pro Se*
29635
P.O. Box 300
Marcy, NY 13403

**HON. ERIC T. SCNEIDERMAN**              **KRISTEN M. QUARESIMO, ESQ.**
New York State Attorney General          Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

*Pro se* Plaintiff Jamaal Ali brings this Complaint, pursuant to 42 U.S.C. § 1983, as well as Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a) ("Rehabilitation Act"), alleging that Defendants (1) enforced a medication policy which prohibited Plaintiff from carrying and self-administering his emergency rescue inhaler in the event of an asthma attack, (2) refused to

reasonably accommodate Plaintiff by modifying the medication policy in light of his disability, and (3) excluded Plaintiff from programming and activities because of his disability. *See generally* Dkt. No. 1, Compl. Defendants move for Judgment on the Pleadings, pursuant to Federal Rule of Civil Procedure 12(c). Dkt. No. 23. Plaintiff opposes the Motion. Dkt. Nos. 27, 30, & 31. For the reasons that follow we recommend that Defendants' Motion be **GRANTED** in part and **DENIED** in part..

## I. STANDARD OF REVIEW

FED. R. CIV. P. 12(c) provides, in pertinent part "[a]fter the pleadings are closed . . . any party may move for judgment on the pleadings." "In deciding a Rule 12(c) motion, [courts] apply the same standard as that applicable to a motion under Rule 12(b)(6)." *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.), *cert. denied*, 513 U.S. 816 (1994) (citations omitted). On a motion to dismiss, the allegations of the complaint must be accepted as true. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972). The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (*overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984)).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, and matters to which the court may take judicial notice." *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)). Moreover, "even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is

*integral to the complaint*' may be considered by the court in ruling on such a motion." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (emphasis in original)).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, 754 n.6 (1963); *see also Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. at 697 (citing *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* In this respect, to survive dismissal, a plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 440 U.S. at 555). Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not

alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983). The process of determining whether a plaintiff has "nudged [his] claims . . . across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. at 679-80.

With this standard in tow, we consider the plausibility of Plaintiff's Complaint.

## II. DISCUSSION

### A. Background

The following facts, taken from the Plaintiff's Complaint, are accepted as true for the purposes of deciding Defendants' Motion for Judgment on the Pleadings.

At all times relevant to the Complaint, Plaintiff was involuntarily civilly committed at the Central New York Psychiatric Center ("CNYPC") and enrolled in New York State's Sex Offender Treatment Program ("SOTP"). Compl. at p. 3.[1] Plaintiff has suffered from chronic asthma since childhood. *Id.* Although Plaintiff has suffered severe asthma attacks in the past, currently Plaintiff's asthma is "stable and does not require continual focus." *Id.* Plaintiff's asthma is kept under control with daily doses of Advair, Accolade, and Claritin. *Id.* at p. 4. In addition to taking daily medication, Plaintiff also has a handheld emergency inhaler "[t]o quickly combat sudden [a]sthma attacks." *Id.* Pursuant to CNYPC's medication policy, Plaintiff's medication, including his rescue inhaler, is kept at a secured nursing station and can only be administered by CNYPC's medical staff. *Id.*

Plaintiff suffered three asthma attacks at CNYPC between April 6 and May 30, 2010. The

---

[1] Because the pages of the Complaint are unnumbered, the Court will refer to the pagination assigned by the Electronic Court Filing system ("ECF").

first occurred in the facility's Treatment Mall on April 6, 2010. *Id.* After the attack began, Plaintiff immediately requested help and was provided with his rescue inhaler by CNYPC medical staff within twenty-minutes. *Id.* However, the rescue inhaler did not abate Plaintiff's symptoms which included "violent coughing, chest tightness, wheezing, and extreme difficulty breathing." *Id.* A "Code Blue" was called and a doctor and more nurses arrived with a nebulizer machine, however, they failed to bring all of the necessary tubing required to operate the machine and an additional twenty-minutes elapsed before the necessary tubing was retrieved and Plaintiff was "adequately" treated. *Id.* at pp. 4–5. Plaintiff was placed on bed rest for the remainder of that day as well as the majority of the following day "[t]o primarily afford the seven day dosage of prednisone (i.e., steroid to help expand his lungs) to initially take effect." *Id.* at p. 5. During that period, Plaintiff did not participate in SOTP programming. *Id.*

On April 16, 2010, Plaintiff suffered another asthma attack. Plaintiff quickly went to the nurses station to ask for his inhaler, however because the nurse was on lunch break, there was a delay of approximately thirty-minutes while a Secure Care Treatment Assistant called for the nurse. *Id.* Plaintiff's third attack came on May 30, 2010, while Plaintiff was walking around the exercise yard. *Id.* Plaintiff asked for assistance and received his inhaler within approximately fifteen minutes. *Id.* at p. 6.

## B. New York State Mental Hygiene Law Claim

In addition to federal law claims, Plaintiff also alleges a cause of action against Defendants on the grounds that they violated N.Y. MENTAL HYG. LAW § 7.18. Compl. at p. 8. However, N.Y. MENTAL HYG. LAW § 7.18 is a regulatory statute, and as such does not provide for a private cause of action. *See Lombardo v. Stone*, 2001 WL 940559, at *5 (S.D.N.Y. Aug. 20, 2001) (citing

*McWilliams v. Catholic Diocese of Rochester,* 536 N.Y.S.2d 285, 286 (N.Y. App. Div. 4th Dep't 1988). Therefore, we recommend that the Court **DISMISS** this claim, *sua sponte,* with prejudice. *See* 28 U.S.C. § 1915(d)(2) (providing authority for district court to dismiss a claim brought *in forma ppauperis* if it fails to state a claim upon which relief can be granted).

### C. § 1983 Claim

Plaintiff alleges that CNYPC's medication policy caused a preventable delay in his ability to treat a potentially life threatening asthma attack because it required him to seek assistance from CNYPC staff in the event of an emergency thereby inevitably delaying treatment. In other words, "Defendants, specifically Dr. Sawyer, violated [his] 14th Amendment rights. By failing to [e]nsure that [he] received prompt and reasonable medical care." Compl. at p. 7. Construed liberally, Plaintiff's claim is that Defendants were deliberately indifferent to his serious medical needs. However, as explained below, we recommend that Plaintiff's claim be **DISMISSED** because he has failed to plausibly allege that the named Defendants were somehow personally involved in any constitutional transgression, or that they acted with deliberate indifference.

Claims of deliberate medical indifference brought by civilly committed persons are adjudged under the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment's prohibition against cruel and unusual punishment; nonetheless, courts use the same standard to evaluate both types of claims. *See Smith v. Hogan*, 2011 WL 4343978, at * 7 (N.D.N.Y. Aug. 1, 2011) (citing *Groves v. New York*, 2010 WL 1257858, at * 6 (N.D.N.Y. Mar. 1, 2010), & *Caiozzo v. Koreman*, 581 F.3d 63, 66 (2d Cir. 2009)). To state a claim for deliberate indifference to a serious medical need under either Amendment, Plaintiff must demonstrate (1) a serious medical condition and (2) deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994); *Hathaway v.*

*Coughlin ("Hathaway I")*, 37 F.3d 63, 66 (2d Cir. 1994). "[T]he plaintiff must allege conduct that is 'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.'" *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir. 1992) (quoting *Estelle v. Gamble*, 429 U.S. at 102, 105-06 (1976)).

It is well settled that merely having asthma, particularly in cases such as Plaintiff's where the condition is stable, is not a sufficiently serious condition for purposes of a medical indifference claim; contrariwise, an **asthma attack** can constitute a sufficiently serious condition. *See Peterson v. Cecot*, 2011 WL 4343842, at *4–5 (N.D.N.Y. Mar. 8, 2011) (collecting cases discussing the difference between being asthmatic and the resulting symptomology). Here, Plaintiff alleges that he suffered three separate asthma attacks while at CNYPC with symptoms that included "violent coughing, chest tightness, wheezing, and extreme difficulty breathing." Compl. at pp. 4–6. Such claims are likely sufficient to establish that Plaintiff's asthma attacks constituted a sufficiently serious medical condition for Eighth Amendment purposes. *See Kearsey v. Williams,* 2005 WL 2125874, at *4 (S.D.N.Y. Sept. 1, 2005) (on summary judgment, plaintiff's asthma attacks were sufficiently serious for purposes of an Eighth Amendment medical indifference claim where he had complained on three separate occasions of being unable to breathe as a result of his asthma, that his chest had "tightened up" and that he was experiencing chest pains).

Nonetheless, Plaintiff's claim still fails because he has not alleged any facts from which it could plausibly be concluded that anyone at CNYPC, including the named Defendants, were deliberately indifferent toward Plaintiff while he was experiencing an asthma attack. Plaintiff does not allege that treatment was ever purposefully withheld during any of his asthma attacks. Rather, by his own admission, during each of his asthma attacks, CNYPC medical staff provided him with

his inhaler, and when necessary, additional emergency medical care. Compl. at pp. 4–6. Nor does Plaintiff allege that his overall asthma condition worsened as a result of these treatments – *i.e.,* that he began to experience more frequent asthma attacks – or that Defendants were ever unable to stop one of his attacks. Rather, it appears that the basis for Plaintiff's claim is that he suffered unnecessarily for between fifteen and forty-minutes while waiting for his inhaler to be released from the nursing station, and/or while CNYPC's medical staff made various mistakes that delayed further medical treatment.

While CNYPC's alleged incompetence may have constituted medical malpractice, medical malpractice is not the equivalent of deliberate indifference. *Chance v. Armstrong*, 143 F.3d at 702 (quoting *Hathaway II*, 99 F.3d at 553); *see also Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). Thus, Plaintiff has failed to plausibly allege that CNYPC's medical staff was deliberately indifferent to his asthma attacks. *See Ward v. LeClaire*, 2009 WL 6302822, at * 11 (N.D.N.Y. Sept. 16, 2009) (finding an absence of deliberate indifference where plaintiff was made to wait up to an hour for asthma treatment, but treatments were never deliberately denied); *see also Esmont v. City of New York*, 371 F. Supp. 2d 202, 218 (E.D.N.Y. Mar. 16, 2005) (finding a lack of deliberate indifference where "when informed that [plaintiff] was suffering from an asthma attack, defendants provided emergency medical services and offered to take [plaintiff] to the hospital").

Moreover, even if Plaintiff could establish that CNYPC's medical staff was somehow deliberately indifferent to his asthma attacks, his claims would still fail because he has not alleged that any of the named Defendants were personally involved in any of his treatments.

> The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which

> unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citations omitted).

Plaintiff never alleged that SOTP's Director Defendant Maxymillian, Defendant Dr. Sawyer, the Executive Director of New York State's Office of Mental Health ("OMH"), or Defendant Dr. Hogan, OMH's Commissioner, had anything to do with the actual treatment of his asthma attacks. Indeed, there is no indication that any of the named Defendants were even present while Plaintiff received such treatments. It is well established that the "personal involvement of defendants in alleged constitutional deprivation[] is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted). Moreover, "the doctrine of *respondeat superior* cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement." *Kinch v. Artuz*, 1997 WL 576038, at *2 (S.D.N.Y. Sept. 15, 1997) (citing *Colon v. Coughlin*, 58 F.3d at 874 & *Wright v. Smith*, 21 F.3d at 501) (further citations omitted). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Thus, to the extent that Plaintiff attempts to hold the named Defendants liable *via* a theory of *respondeat superior*, any such claim must fail.

Likewise, regardless of whether Defendants created, countenanced, or propagated CNYPC's medication policy, there is no evidence that the medication policy led to any unconstitutional treatment of Plaintiff. Accordingly, such acts do not constitute personal involvement in any constitutional violation. For these reasons, we recommend that Defendants' Motion be **GRANTED** as to Plaintiff's § 1983 deliberate medical indifference claim.

## D. ADA & Rehabilitation Act Claims

Plaintiff claims that Defendants violated Title II of the ADA by failing to reasonably accommodate his disability under the ADA – by refusing to modify their medication policy to allow him to carry his rescue inhaler. Compl. at p. 7. Defendants argue that Plaintiff has failed to allege that he qualifies as a disabled individual under the ADA or that he was excluded from programming because of his disability. *See generally* Dkt. No. 23-1, Defs.' Mem. of Law. As explained below, we disagree with Defendants.

Before we turn to the substance of Plaintiff's claims we first note that Plaintiff cannot maintain an action, pursuant to the ADA or the Rehabilitation Act, against Defendants in their individual capacities. *Phelan v. Quinn*, 2012 WL 2325845, at *3 (N.D.N.Y. May 21, 2012) (Hurd, J.) (citations omitted); *see also Hilton v. Wright*, 2013 WL 873826, at *16 & *19 (N.D.N.Y. Mar. 11, 2013) (Hurd, J.). Therefore, we recommend that Defendants' Motion be **GRANTED**, with prejudice, as to Plaintiff's claims against the Defendants in their individual capacities.

To bring a claim under Title II of the ADA, a plaintiff must establish that he (1) is a qualified individual with a disability; (2) is being excluded from participation in, or being denied benefits of some service, program or activity by reason of his disability; and (3) the entity providing the service is a public entity. *Farid v. Demars,* 2009 WL 455450, at *4 (N.D.N.Y. Feb. 23, 2009) (citation omitted). Similarly, to state a prima facie claim for relief under the Rehabilitation Act, a plaintiff must establish that: (1) they are a "handicapped person" under the Act; (2) they are "otherwise qualified" to participate in the offered activity or program or to enjoy the services or benefits offered; (3) they are being excluded from participation or enjoyment solely by reason of their disability; and (4) the entity denying participation or enjoyment receives federal financial assistance.

*See Rothschild v. Grottenthaler,* 907 F.2d 286, 289–90 (2d Cir. 1990). "The main difference between the statutes is that coverage under the Rehabilitation Act is limited to entities receiving federal financial assistance, while ADA's reach extends to private entities. When brought together, claims under Title II and Section 504 may be treated identically." *Hilton v. Wright*, 2013 WL 873826, at *19 (citing *Henrietta D. v. Bloomberg,* 331 F.3d 262, 272 (2d. Cir. 2003)).

Here, Defendants do not dispute that CNYPC is a public entity subject to the ADA,[2] that CNYPC receives federal financial assistance, or that Plaintiff is otherwise qualified to attend the programming he alleges he was excluded from. Therefore, our inquiry focuses on whether Plaintiff was disabled for purposes of the ADA and Rehabilitation Act, and whether Plaintiff was discriminated against because of his disability.

### 1. Disability

To show that a particular plaintiff qualifies as disabled under the ADA and the Rehabilitation act, the Second Circuit requires that

> [A] plaintiff must first show that she suffers from a physical or mental impairment. . . . Second, plaintiff must identify the activity claimed to be impaired and establish that it constitutes a "major life activity. . . ." Third, the plaintiff must show that her impairment 'substantially limits' the major life activity previously identified.

*Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 147 (2d Cir. 2002) (internal citations omitted).

In 2008 – partially in response to the Supreme Court's decisions in *Sutton v. United Air Lines, Inc.* and *Toyota Motor Mfg., Ky., Inc. v. Williams*[3] – Congress amended the ADA in order

---

[2] Moreover, Courts in this Circuit have found that "CNYPC, [which is] operated by the New York OMH, is considered a public entity for the purposes of the ADA, and as such is required to provide 'reasonable modifications to rules, policies, or practices . . .'" *See, e.g., Lane v. Carpinello,* 2009 WL 3074344, at *13 (N.D.N.Y. Sept. 24, 2009).

[3] In 1999 the Supreme Court issued an ADA-related decision in which they found that the mitigating effects of medication should be considered when determining whether a particular impairment substantially limits a major life activity. *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 482 (1999). Then in 2002, the Supreme Court determined
(continued...)

to broaden its applicability to protect a larger number of disabilities. *See* Pub. L. 110-325, § 4(a), Sept. 25, 2008, 122 Stat. 3555; 42 U.S.C.A. §§ 12102(4)(D) & (E).[4] Among the changes imposed by Congress in 2008 were two provisions which are particularly relevant to the instant case. The first prohibits courts from considering the mitigating effects of medication when determining to what extent a physical impairment substantially impairs a major life activity, and the second expanded coverage of the ADA to impairments that were "episodic" in nature. 42 U.S.C.A. §§ 12102(4)(D) & (E).

Here, for purposes of a motion to dismiss, Plaintiff has sufficiently alleged that he has asthma. *See generally* Compl. Furthermore, it is clear that breathing constitutes a "major life activity" for purposes of the ADA. *See* 42 U.S.C. §§ 12102(2). However, Plaintiff's asthma condition does not appear to significantly impair his ability to breathe. Indeed, according to Plaintiff, "[his] asthma condition is stable and does not require continual focus." Compl. at pp. 3–4. Moreover, Plaintiff claims that "his last major hospitalization, [for severe asthma attacks], was approximately April [of] 2004." *Id*. at p. 3.

Contrariwise, Plaintiff's *asthma attacks* cause him to experience "violent coughing, chest tightness, wheezing, and extreme difficulty breathing." *Id*. at p. 4. Given Congress's 2008 amendments to the ADA and the stated purposes thereof, it is certainly plausible that Plaintiff's *asthma attacks* – episodic as they may be – substantially impair his ability to breathe when they

---

[3](...continued)
that the terms "substantially limit" and "major life activity" should "be interpreted strictly to create a demanding standard for qualifying as disabled." *Toyota Motor Mfg., Ky., Inc., v. Williams*, 534 U.S. 184, 197 (2002).

[4] This same sentiment was reflected in changes made by the Executive branch. *See* 29 C.F.R. Pt. 1630, App; *see also Bolden v. Cablevision Sys., Corp.*, 2011 WL 3439532, at *2 (E.D.N.Y. July 26, 2011) (citing, *inter alia*, 29 C.F.R. §§ 1630(j)(1)(ii), & 1630.2(j)(1)(I) for the proposition that "the term substantially limits [should] be construed broadly in favor of expansive coverage . . . [and the term] substantially limits is not meant to be a demanding standard.") (internal quotations omitted).

occur.[5]  Therefore, at this early stage, Plaintiff has plausibly alleged that he is disabled for purposes of the ADA and Rehabilitation Act.

## 2. Discrimination

The Anti-Discrimination provision of Title II of the ADA, states in pertinent part, that "[s]ubject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Likewise, Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]"  29 U.S.C. § 794(a).  "An ADA plaintiff must demonstrate that a denial of benefits occurs 'by reason of . . . disability, . . . which essentially means that the plaintiff must prove that the denial is 'because' of the disability.'"  *Henrietta D. v. Bloomberg*, 331 F.3d at 278 (quoting *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 601 & 611–12 (1999) & 42 U.S.C. § 12132).  A qualified individual can establish discrimination under one of three theories "(1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation."  *Brief v. Albert Einstein Coll. of Med.*, 423 F. App'x 88, 90 (2d Cir. 2011) (quoting *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (other citation omitted)).

---

[5] Defendants cite *DeCastro v. Lahood*, 2009 WL 1067030, at *7 (E.D.N.Y. Apr. 21, 2009), for the proposition that "[a]sthma only constitutes [a substantial limitation] where the plaintiff has a substantial history of asthma attacks and is severely restricted in his or her daily activities as a result of the condition."  Defs.' Mem. of Law at p. 14. However, the *DeCastro* Court expressly noted that it's decision was based on pre-2008 ADA law.  *See De Castro v. Lahood*, 2009 WL 1067030, at *4 n.7.  Therefore, the *DeCastro* court did not consider the ramifications of the 2008 Amendments and is inapplicable to the case at bar.

Although Plaintiff claims that he was excluded from programming for two days, he explains that he was unable to attend programming and services "primarily" because he was bedridden in order to give the steroid medication he was prescribed time to expand his lungs. *See* Compl. at p. 5. Such a claim does not plausibly allege that Defendants prevented Plaintiff from attending programming because of some intentional or irrational disability-based discriminatory animus. Nor does it plausibly substantiate a claim of disparate impact; indeed, Plaintiff does not plead any facts regarding the medication policy's effect on other SOTP participants. *See Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 574-75 (2d Cir. 2003) ("To establish a [disparate impact], the plaintiff must show: (1) the occurrence of certain outwardly neutral practices, and (2) *a significantly adverse or disproportionate impact on persons of a particular type* produced by the defendant's facially neutral acts or practices.") (emphasis in original) (internal quotation marks and citations omitted).

However, while admittedly thin, Plaintiff has plausibly stated that Defendants failed to grant him a reasonable accommodation in light of his asthma attacks. Construed liberally, Plaintiff's Complaint alleges that but for Defendants' medication policy prohibiting him from self-carrying his asthma inhaler, he would not have been bedridden, and therefore, would not have missed two days of programming. *See* Compl. at p. 5. According to 42 U.S.C. § 12112(b)(5)(A), "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability" is discrimination under the ADA.

Here, Plaintiff has plausibly alleged that at the time he requested an accommodation to CNYPC's medication policy Defendants were aware of his asthma condition and the fact that he suffered from debilitating asthma attacks. *See* Compl. at Exs. 2–7 (copies of correspondence between Plaintiff and Defendants alerting them to his condition, and requesting, pursuant to the

ADA, that their medication policy be modified in light of his disability, pursuant to the ADA). And, that his inability to self-carry his asthma inhaler made it difficult for him to access programming on at least one occasion – for two days after his April 6, 2010 asthma attack. *See* Compl. at p. 5. Therefore, Plaintiff has stated a claim under the ADA and the Rehabilitation Act. *See Henrietta D. v. Bloomberg*, 331 F.3d at 277 ("[T]he demonstration that a disability makes it difficult for a plaintiff to access benefits that are available to both those with and without disabilities is sufficient to sustain a claim for a reasonable accommodation.").

### E. Eleventh Amendment

In the instant case, Plaintiff did not name the State of New York nor CNYPC as defendants in this action. Instead, Plaintiff seeks monetary and injunctive relief against Defendants in their individual and official capacities.[6] Defendants argue that "any claims against [D]efendants, in their official capacities, including [P]laintiff's state law claims, should be dismissed as barred by the Eleventh Amendment." Defs.' Mem. of Law at p. 4.

The Eleventh Amendment states, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Although by its terms, the amendment bars suit by citizens of one state against another state, the Supreme Court has held that such amendment similarly bars suits against a state by its own citizens. *Hans v. Louisiana*, 134 U.S. 1 (1890). "The Eleventh Amendment thus 'affirm[s] that the

---

[6] Plaintiff did not specify in which capacity, either individual or official, he was naming each of the Defendants. *See* Compl. at p. 1. However, in light of his *pro se* status, we interpret his Complaint as including claims against the Defendants in both their individual and official capacities. *See Davis v. Pallito*, 2011 WL 4443026, at *3 (D. Vt. June 16, 2011) (reaching the same conclusion).

fundamental principle of sovereign immunity limits the grant of judicial authority in Art. III.'"
*Richardson v. New York State Dep't of Corr. Servs.*, 180 F.3d 426, 447-48 (2d Cir. 1999) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984)). Thus, sovereign immunity provided for in the Eleventh Amendment prohibits suits against the state, including a state agency in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. at 98-101; *Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993); *Daisernia v. State of New York*, 582 F. Supp. 792, 796 (N.D.N.Y. 1984). In appropriate circumstances, the jurisdictional bar of the Eleventh Amendment may immunize a state official acting in his or her official capacity. *See In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007) (citation omitted); *see also Mathie v. Fries*, 121 F.3d 808, 818 (2d Cir. 1997) ("A claim against a government officer in his official capacity is, and should be treated as, a claim against the entity that employs the officer . . . .").

Nonetheless, under the doctrine of *Ex Parte Young*, 209 U.S. 123 (1908), a suit may proceed against a state official in his or her official capacity – notwithstanding the Eleventh Amendment – when a plaintiff "(a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective." *In re Deposit Ins. Agency*, 482 F.3d at 618 (quotations and citations omitted). Here, to the extent that Plaintiff has sufficiently alleged that Defendants' failure to provide him with a reasonable accommodation to his chronic medical condition, Plaintiff has alleged an ongoing violation of both the ADA and the Rehabilitation Act. Additionally, Plaintiff seeks both declaratory and injunctive relief against Defendants in their official capacities. *See* Compl. at p. 8. Therefore, we recommend that Defendants' Motion be **DENIED** as to Plaintiff's claims for injunctive and declaratory relief under the ADA and Rehabilitation Act.

However, the same cannot be said for Plaintiff's request for injunctive and declaratory relief

against the Defendants in their official capacities for their alleged violations of The New York State Human Rights Law. Such a claim involves the violation of state law, and the doctrine of *Ex Parte Young* does not apply to such claims. *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 106 (1984) (concluding that "*Young* and *Edelman* are inapplicable in a suit against state officials on the basis of state law"). Therefore, we recommend that Defendants Motion be **GRANTED** as to Plaintiff's suit against Defendants in their official capacities brought pursuant to New York State's Human Rights Law.

However, our inquiry does not end here, we must also analyze the effect of the Eleventh Amendment on Plaintiff's claims for monetary damages against the Defendants in their official capacities. *See* Compl. at p. 9.

### 1. ADA

"Eleventh Amendment immunity is not, . . . immutable. Under section five of the Fourteenth Amendment, Congress can abrogate the immunity to enforce the substantive rights guaranteed by the Fourteenth Amendment." *Bolmer v. Oliveira*, 594 F.3d 134, 146 (2d Cir. 2010) (citing *Tennessee v. Lane*, 541 U.S. 509, 518 (2004)). Congress attempted to do just that when it enacted Title II of the ADA. *See* 42 U.S.C. § 12202 ("A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter."). However, the Second Circuit has held that in enacting Title II Congress had exceeded its authority under section five of the Fourteenth Amendment, "but that Title II suits could be limited to circumstances in which it had not." *Bolmer v. Oliveira*, 594 F.3d at 146 (citing *Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn*, 280 F.3d 98, at 110–11 (2d Cir.2001). In other words, "under section five of the Fourteenth Amendment,

Congress may prohibit conduct which actually violates the Fourteenth Amendment, as well as 'a somewhat broader swath of conduct' that is constitutional but which Congress may prohibit in order to remedy or deter actual violations." *Hilton v. Wright*, __ F. Supp. 2d __, 2013 WL 873826, at *17 (N.D.N.Y. Mar. 11, 201 (citing *Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn*, 280 F.3d at 109–10).

In *Garcia*, the Second Circuit found that "Title II suits could be maintained against states only if the plaintiff showed 'that the Title II violation was motivated by discriminatory animus or ill will based on the plaintiff's disability." *Bolmer v. Oliveira*, 594 F.3d at 146 (quoting *Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn*). Then, in *United States v. Georgia*, the Supreme Court reaffirmed that "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." 546 U.S. 151, 159 (2006) (emphasis in original). However, "[*United States v.*] *Georgia* left open the question of whether Title II validly abrogates sovereign immunity for conduct that violates Title II but does not violate the Constitution." *Hilton v. Wright*, 2013 WL 873826, at *18 (citing *United States v. Georgia*, 546 U.S. at 159). In the face of this uncertainty, courts within the Second Circuit have approached this issue in a variety of ways. *See Cabassa v. Smith*, 2009 WL 1212495, at *14 n.17 (N.D.N.Y. Apr. 30, 2009) (LEK/DEP) (citing cases and discussing the divergence between the approaches taken by courts within the Second Circuit in the wake of *Garcia, Lane,* and *Georgia*).

Bearing in mind the split amongst our sister courts, we believe the approach taken in *Goonewardena v. New York*, 475 F. Supp. 2d 310, 323 (S.D.N.Y. 2007), is the appropriate test in cases such as this, where the defendant allegedly violated Title II of the ADA but not the Fourteenth

Amendment. Accordingly, to determine whether abrogation under section five of the Fourteenth Amendment would be valid, a court must consider (1) the constitutional right or rights that Congress sought to protect when it enacted the statute; (2) whether there was a history of constitutional violations to support Congress' determination that prophylactic legislation was necessary; and (3) whether the statute is a congruent and proportional response to the history and pattern of constitutional violations. *Goonewardena v. New York*, 475 F. Supp. 2d at 323 (citing *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 368 (2001)); *see also Tennessee v. Lane*, 541 U.S. 509, 523–30 (2004) (holding that even in cases where state conduct does not facially violate the Fourteenth Amendment, Title II may still validly abrogate state sovereign immunity in order to prevent and deter unconstitutional conduct, where the conduct in question violates other Amendments which have been subsumed within the auspices of the Fourteenth Amendment).

In the instant case, because Defendants have not addressed these issues, they have failed to meet their burden of establishing entitlement to Eleventh Amendment Immunity. *See Woods v. Rondout Valley Cent. Sch. Dist. Bd of Educ.*, 466 F.3d 232, 237 (2d Cir. 2006) (citing cases for the proposition that "[a]lthough the Supreme Court has not specifically ruled[,] . . . circuit courts . . . have unanimously concluded that the entity asserting Eleventh Amendment immunity has the burden to show that it is entitled to immunity.") (internal quotation marks and citations omitted). Therefore, we recommend that Defendants' Motion be **DENIED**, without prejudice, as to Plaintiff's monetary claims against Defendants in their official capacities pursuant to the ADA, with leave to re-raise the defense upon a fuller record.

### 2. Rehabilitation Act

The State of New York has waived its right to sovereign immunity under the Eleventh

Amendment to claims arising under the Rehabilitation Act.  *See Keitt v. New York City*, 882 F. Supp. 2d 412, 455-56 (S.D.N.Y. 2011) (citing *Degrafinreid v. Ricks,* 417 F. Supp. 2d 403, 414 (S.D.N.Y. 2006) for the proposition that "[New York's] continued acceptance of [federal] funds constituted valid waiver of sovereign immunity for Rehabilitation Act claims after either September 25, 2001, when *Garcia* [*v.S.U.N.Y. Health Sciences Center of Brooklyn*] was decided, or February 25, 2001, when [*Bd. of Trustees of Univ. of Alabama v.*] *Garrett* was decided.").  Accordingly, we recommend that Defendants' Motion be **DENIED** as to Plaintiff's monetary claims against Defendants in their official capacities brought pursuant to the Rehabilitation Act.

### 3.  New York State Human Rights Law

In addition to Plaintiff's federal claims, Plaintiff raises a state law claim pursuant to New York State's Human Rights Law § 290, *et. seq.  See* Compl. at pp. 7–8.

The Eleventh Amendment bars citizens of a state from suing that state in federal court.  *Hans v. Louisiana*, 134 U.S. 1.  New York has not waived its sovereign immunity as to any provisions of its Human Rights Law.  *Widomski v. State Univ. of New York (SUNY) at Orange*, 2013 WL 1155439, at *14 n.16 (S.D.N.Y. Mar. 20, 2013) (collecting cases).  Therefore, Plaintiff's monetary claims against Defendants in their official capacities pursuant to New York's Human Rights Law are barred, and we recommend that Defendants' Motion be **GRANTED** as to these claims.

## F.  Qualified Immunity

The doctrine of qualified immunity shields public officials from suit for conduct undertaken in the course of their duties if it "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Firzgerald*, 457 U.S. 800, 818 (1982); *Eng v. Coughlin*, 858 F.2d 889, 895 (2d Cir. 1988).  The doctrine protects public officials from

'personally facing the risk of incurring ruinous liability in the form of money damages, which would deter qualified people from public service." *Eng v. Coughlin*, 858 F.2d at 895.

Qualified immunity analysis involves a three step inquiry. *See Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 211 (2d Cir. 2003). As a threshold matter, it must first be determined whether, based upon the facts alleged, a plaintiff has established a constitutional violation. *Id.* If yes, the court must then question whether the right in issue was clearly established at the time of the alleged violation. *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001)). Finally, if a plaintiff had a "clearly established, constitutionally protected right that was violated, he or she must demonstrate that it was not objectively reasonable for the defendant to believe that his action did not violate such law." *Gill v. Hoadley*, 261 F. Supp. 2d 113, 125 (N.D.N.Y. 2003) (citing, *inter alia*, *Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d at 211); *see also Anderson v. Creighton*, 483 U.S. 635, 639 (1987); *Lewis v. Cowan*, 165 F.3d 154, 166 (2d Cir. 1999).

Qualified immunity is an affirmative defense that must be pleaded by the official claiming it. *Satchell v. Dilworth*, 745 F.2d 781, 784 (2d Cir. 1984) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982)). The only pleading filed in the present case thus far is the Complaint. Defendants have not raised this affirmative defense in a responsive pleading as set forth in Fed. R. Civ. P. 8(c), but rather in their Memorandum of Law in support of their Motion to Dismiss. Generally, however, "the defense of qualified immunity cannot support the grant of a . . . 12(b)(6) motion for failure to state a claim upon which relief can be granted." *Green v. Maraio*, 722 F.2d 1013, 1018 (2d Cir. 1983); *see also McKenna v. Wright*, 386 F.3d 432, 435 (2d Cir. 2004) (quoting *Green*). An exception to this general rule exists where the complaint itself sets up, on its face, the qualified immunity defense; in such an occasion, dismissal for failure to state a claim would be appropriate.

*Roniger v. McCall*, 22 F. Supp. 2d 156, 162 (S.D.N.Y. 1998) (citing *Green v. Maraio*, 722 F.2d at 1019); *see also McKenna v. Wright*, 386 F.3d at 435.

The Second Circuit has further held that qualified immunity "turns on factual questions that cannot be resolved at [the motion to dismiss] stage of proceedings." *Taylor v. Vermont Dep't of Educ.*, 313 F.3d 768, 793 (2d Cir. 2002). For these reasons, any adjudication as to the applicability of the qualified immunity affirmative defense would be premature since "[r]esolution of qualified immunity depends on the determination of certain factual questions that cannot be answered at this stage of the litigation." *Denton v. McKee*, 332 F. Supp. 2d 659, 666 (S.D.N.Y. 2004).

Here, it is not apparent from the face of the Complaint that Defendants were entitled to qualified immunity for their failure to grant Plaintiff a reasonable accommodation under the ADA. Accordingly, we recommend that Defendants' Motion be **DENIED** without prejudice, and that Defendants be granted leave to re-raise this issue upon a fuller record.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion (Dkt. No. 23) be **GRANTED** in part, and **DENIED** in part as follows:

1.    **GRANTED** as to Plaintiff's § 1983 claim;

2.    **GRANTED**, with prejudice, as to Plaintiff's claims pursuant to the ADA and Rehabilitation Act against Defendants in their individual capacities;

3.    **GRANTED** with prejudice as to Plaintiff's New York State Human Rights Law claim against Defendants in their Official capacities, and **DENIED** as to Plaintiff's New York State Human Rights Law claim against Defendants in their individual capacities;

4.    **GRANTED** as to Plaintiff's claims pursuant to the Rehabilitation Act for monetary damages against Defendants in their official capacities;

5. **DENIED** as to Plaintiff's claims pursuant to the ADA and the Rehabilitation Act for declaratory and injunctive relief against Defendants in their official capacities;

6. **DENIED**, without prejudice, as to Plaintiff's claims pursuant to the ADA for monetary damages against Defendants in their official capacities;

7. **DENIED**, without prejudice, as to Defendants' qualified immunity defense; and it is further

**RECOMMENDED** that Plaintiff's claim pursuant to the New York Mental Hygiene Law be **DISMISSED with prejudice** under the Court's authority in 28 U.S.C. § 1915(d)(2); and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. <u>**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.**</u> *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72 & 6(a).

Date:   September 11, 2013
        Albany, New York

Randolph F. Treece
U.S. Magistrate Judge