**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JAMAAL ALI,

                              Plaintiff,

                - v -                                      Civ. No. 9:12-CV-104
                                                                      (DNH/RFT)
MICHAEL F. HOGAN, *et al.*,

                              Defendants.

**APPEARANCES:**                              **OF COUNSEL:**

JAMAAL ALI
*Pro se* Plaintiff
29635
CNYPC
PO Box 300
Marcy, NY 13403

HON. ERIC T. SCHEIDERMAN                    MELISSA A. LATINO, ESQ.
New York State Attorney General             Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

<u>**REPORT-RECOMMENDATION and ORDER**</u>

On January 20, 2012, *pro se* Plaintiff Ali, while involuntarily committed at the

Central New York Psychiatric Center ("CNYPC"), filed a civil rights action pursuant

to 42 U.S.C. § 1983, as well as Title II of the Americans with Disabilities Act, 42

U.S.C. § 12101 *et seq.* (12"ADA"), Section 504 of the Rehabilitation Act of 1973, 29

U.S.C. § 794(a) ("Rehabilitation Act"), N.Y. MENTAL HYG. LAW § 7.18, and N.Y.

HUMAN RIGHTS LAW § 290 *et seq* ("HRL").  Dkt. No. 1, Compl. at pp. 3 & 7-8.

Specifically, Plaintiff contends that Defendants violated Title II of the ADA and Section 504 of the Rehabilitation Act by failing to reasonably accommodate his disability under the ADA — by refusing to modify their medication policy to allow him to carry his rescue inhaler for immediate relief of an asthma attack.

On November 6, 2012, Defendants filed a Motion for Judgment on the Pleadings, pursuant to FED. R. CIV. P. 12(c), raising the Eleventh Amendment and qualified immunity defenses; that Motion was granted and denied in part. Dkt. No. 34, Dec. & Order. Plaintiff's remaining claims seek declaratory and injunctive relief under the ADA and the Rehabilitation Act, monetary relief under the ADA against the Defendants in their official capacities, and include a NY HRL claim against the Defendants in their individual capacities. *See id.* Following discovery, Defendants submitted a Motion for Summary Judgment on the remaining claims. Dkt. No. 43, Defs.' Mot. for Summ. J. Plaintiff opposes the pending Motion for Summary Judgment. Dkt. No. 48, Pl.'s Resp. in Opp'n.

As set forth below, the court recommends granting Defendants' Motion for Summary Judgment as there are no genuine disputes as to any material fact that would preclude a court from determining, as a matter of law, that the Defendants did not violate the ADA and Rehabilitation Act.

## I. DISCUSSION

## A. Standard of Review

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when

the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173

(2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991). Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## B. Material Facts

*Pro se* Plaintiff Ali is a sex offender who is involuntarily committed at CNYPC pursuant to New York's Mental Health Law Article 10. Compl. at p. 3. Since childhood, Plaintiff has suffered from asthma and has used several medications to control his symptoms. Dkt. No. 43-7, Kristen M. Quaresimo, Esq., Decl., Ex. A, Jamaal Ali Dep., dated Jan. 31, 2014, at pp. 18-22. Plaintiff is acutely aware of when he must resort to his inhaler to alleviate his symptoms or prevent an asthma attack. *Id.* at pp. 20-21 & 40. His inhaler is stored in the nurse's station, which is located inside his residential building. Dkt. No. 43-10, Lisa Helmer Decl., undated, at ¶ 9; *see* Ali Dep. at pp 38-39. At CNYPC, nurses are on duty twenty-four hours per day, seven days a week.[1] Helmer Decl. at ¶ 9. Generally, in order to retrieve his inhaler, Plaintiff must alert a Secure Care Treatment Assistant ("SCTA") or a nurse that he is having

---

[1] Despite his lack of personal knowledge, Plaintiff summarily concludes that his resident building does not have nurses on duty twenty-four hours a day. Ali Dep. at p. 31. Such conclusory statements are insufficient to rebut the Declaration provided by the Chief Nursing Officer on behalf of Defendants' Motion.

trouble breathing, at which point he is taken to the nurse's station. Ali Dep. at pp. 36, 38, & 74. On one occasion Ali complained about having trouble breathing while in the exercise yard and the nurse brought the inhaler to him. *Id.* at p. 74.

Because CNYPC is a State operated psychiatric facility, its policies must conform to New York State Office of Mental Health Directive 610 ("OMH PC-610"), which allows for "[s]elf-administration of medication . . . only when ordered by a facility physician and supervised by a member of the professional staff." Dkt. No. 43-9, Catherine Benham, Decl., Ex. A, OMH PC-610, issued Aug. 28, 1987, at p. 8. CNYPC Policy No. 6.0 entitled, "Medication Administration and Documentation Responsibilities," states "[i]t is the policy of CNYPC to ensure the safe administration of all medications." Dkt. No. 43-12, Helmer Decl., Ex. B, CNYPC Policy No. 6.0. CNYPC Policy No. 6.0 clarifies OMH PC-610 by mandating that only "Physicians, Nurse Practitioners, Registered Nurses and Licensed Practical Nurses are authorized to administer medications at CNYPC." *Id.* Because of this policy, Plaintiff was prevented him from being able to carry his inhaler on his person.

On April 6, 2010, Plaintiff suffered an asthma attack. Dkt. No. 43-14, Helmer Decl., Ex. D, Progress Note, dated Apr. 6, 2010. Plaintiff's April 6, 2010 clinical note indicates that he received his inhaler after complaining of shortness of breath. *Id.* at p. 1. But, thereafter, Plaintiff continued to have difficulty breathing and a code blue

medical emergency was called. *Id*. at pp. 1 & 2. Plaintiff was placed on a rebreather

mask and, when the physician arrived, he was given Albuterol through a nebulizer and

Prednisone. *Id.* at p. 1. Plaintiff began breathing easier after taking the medication,

and by 3:00 pm he was again "breathing comfortably."[2] Helmer Decl. at ¶ 13 & Ex.

D. He was told he was "done for the day" and could head to the recreation room. Ali

Dep. at p. 58. However, Plaintiff protested against going because he couldn't "do

anything but lay down" after consuming Prednisone. *Id*. at p. 57. When asked to

rejoin the daily programs, after three or four days of taking Prednisone and resting,

Plaintiff remarked, "I am not going anywhere today, man. You got to drag me out of

here." *Id*. at pp. 59-60. Eventually, Plaintiff attended his programs, but spent his time

lying on the floor of the side room. *Id.* at p. 61. In total, Plaintiff missed "a few days"

of exercise and programming. *Id.*

On April 15, 2010,[3] Plaintiff attended a community meeting at CNYPC, where

patient residents would meet with the treatment team to "discuss . . . new policies and

procedures" or "bring up . . . issues." *Id.* at p. 62. There, Ali asked CNYPC's Sex

Offender Treatment Program ("SOTP") Director, Dr. Terri Maxymillian, whether

---

[2] According to Plaintiff, the delay between him receiving his inhaler and nebulizer treatment was due, in part, because his unit's nurse's station did not have a neublizer, and when the nebulizer arrived, the nurse had brought the wrong tubing. Ali Dep. at p. 57.

[3] Clinical forms indicate that Plaintiff requested his inhaler on April 15, 2010, and not on April 16, 2010, as stated in his Complaint. Dkt. No. 43-15, Helmer Decl., Ex. E, Progress Note, dated Apr. 15, 2010

CNYPC could allow him to carry his inhaler. *Id.* at pp. 62-63. But he was informed

that he could not carry his inhaler for security reasons. *Id.* Shortly after the meeting,

Plaintiff felt he was going to have an asthma attack. *Id.* at p. 69. Plaintiff claims to

have waited "about thirty" minutes at the nurse's station before receiving his inhaler.

*Id.* at pp. 69-70; *see also* Dkt. No. 43-15, Helmer Decl., Ex. E, Progress Note, dated

Apr. 15, 2010. Afterwards, Plaintiff skipped his afternoon programming because he

"had to get some rest." Ali Dep. at p. 73.

### C. ADA & REHABILITATION ACT

The Anti–Discrimination provision of Title II of the ADA, states in pertinent

part, that "[s]ubject to the provisions of this subchapter, no qualified individual with

a disability shall, by reason of such disability, be excluded from participation in or be

denied the benefits of the services, programs, or activities of a public entity, or be

subjected to discrimination by any such entity." 42 U.S.C. § 12132. Likewise,

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified

individual with a disability . . . shall, solely by reason of her or his disability, be

excluded from the participation in, be denied the benefits of, or be subjected to

discrimination under any program or activity receiving Federal financial assistance[.]"

29 U.S.C. § 794(a).

To bring a claim under Title II of the ADA, a plaintiff must establish that (1)

the entity providing the service is a public entity; (2) he is a qualified individual with a disability; and (3) and is being excluded from participation in, or being denied benefits of some service, program or activity by reason of his disability. *Farid v. Demars,* 2009 WL 455450, at *4 (N.D.N.Y. Feb. 23, 2009) (citation omitted). Similarly, to state a *prima facie* claim for relief under the Rehabilitation Act, a plaintiff must establish that: (1) the entity denying participation or enjoyment receives federal financial assistance; (2) he is a "handicapped person" as defined in the Act; (3) he is "otherwise qualified" to participate in the offered activity or program or to enjoy the services or benefits offered; and (4) he is being excluded from participation or enjoyment solely by reason of his handicap. *See Rothschild v. Grottenthaler,* 907 F.2d 286, 289–90 (2d Cir. 1990). "The main difference between the statutes is that coverage under [the] Rehabilitation Act is limited to entities receiving federal financial assistance, while ADA's reach extends to private entities. When brought together, claims under Title II and Section 504 may be treated identically." *Hilton v. Wright,* 928 F. Supp. 2d 530, 556-57 (N.D.N.Y. 2013) (citing *Henrietta D. v. Bloomberg,* 331 F.3d 261, 272 (2d. Cir. 2003)).

This Court will analyze Plaintiff's ADA discrimination claim under the *McDonnell-Douglas* burden-shifting framework. *See generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973); *Quad Enters. Co., LLC v. Town of*

*Southhold*, 369 F. App'x 202, 205-06 (2d Cir. 2010) (analyzing an ADA claim based on disparate impact under a modified version of the *McDonnell-Douglass* framework); *Brown v. Cnty. of Nassau*, 736 F. Supp. 2d 602, 612 (E.D.N.Y. 2010) (finding it proper to use a modified burden shifting framework to analyze a Title II ADA claim "[a]lthough the Second Circuit has never explicitly addressed the use of such a framework in the context of an ADA claim under Title II, it has utilized this type of burden-shifting analysis in the context of a claim under Section 504 of the Rehabilitation Act."). Accordingly, here, if Plaintiff establishes his *prima facie* case, the burden then shifts to the Defendants "to assert a legitimate, nondiscriminatory rationale for the challenged [action]." *Mitchell v. Shane*, 350 F.3d 39, 47 (2d Cir. 2003). If the Defendants make such a showing, the burden shifts back to the Plaintiff to demonstrate that the proffered reasons are a mere pretext. *Id.* Thus, the Court's first inquiry is whether Ali has established a *prima facie* case.

### 1. *Prima Facie* Case

Here, Defendants concede that CNYPC is a public entity subject to the ADA and Rehabilitation Act. Dkt. No. 43-4, Defs.' Mem. of Law at p. 9. For purposes of summary judgment, Defendants additionally concede that Plaintiff is disabled under

the ADA and the Rehabilitation Act.[4]  *Id.*  However, Defendants assert that Plaintiff

fails to establish "that he was denied participation in or the benefits of services or

programs, or otherwise discriminated against, solely on account of his asthma[.]"  *Id.*

"An ADA plaintiff must demonstrate that a denial of benefits occurs 'by reason of .

. . disability,' . . . which essentially means that the plaintiff must prove that the denial

is 'because of' the disability[.]"  *Henrietta D. v. Bloomberg,* 331 F.3d at 278 (quoting

*Olmstead v. L.C. ex rel. Zimring,* 527 U.S. 581, 601 & 611–12 (1999) & 42 U.S.C. §

12132).  A qualified individual can establish discrimination under one of three

theories "(1) intentional discrimination (disparate treatment); (2) disparate impact; and

(3) failure to make a reasonable accommodation."  *Fulton v. Goord,* 591 F.3d 37, 43

(2d Cir. 2009) (citation omitted).

By Plaintiff's own account, he has suffered from asthma all his life and is attune

with the practices he must maintain to control his symptoms and the effects the

various medications have on him.  Ali Dep. at pp. 25-26, 71, & 84.  After suffering

from an attack on April 6, 2010, Plaintiff protested against heading to the recreation

room due to the effects of the steroid medication he received to expand his lungs.  *Id.*

at p. 58.  Plaintiff claims "it was a long process" to get himself out of programming

on that day so that he could rest, but he eventually succeeded in "miss[ing] a couple

---

[4] For the purposes of summary judgment, the Defendants concede that "[P]laintiff's asthma, although episodic in nature, constitutes a disability when active."  Dkt. No. 43-4, Defs.' Mem. of Law at p. 9.

of days of programming." *Id.* at pp. 58-61. Similarly, on April 15, 2010, Plaintiff missed an afternoon of programming because he "know[s] [he] [has] to get some rest" after an asthma attack. *Id.* at p. 73. In total, Plaintiff missed about four days of programming.

The fact that Plaintiff missed programming, allegedly due to CNYPC's refusal to modify its policy in order to accommodate him, maybe an exclusion under Title II.[5] *See Fulton v Goord*, 591 F.3d 37 (2d Cir. 2009) (signaling that an inmate's disabled wife may have stated a cause of action when the facility failed to consider whether they could modify its inmate transfer policy.) Nonetheless, Plaintiff's discrimination claim fails because he does not assert nor demonstrate that his inability to attend CNYPC's program(s) was due to discrimination based on his disability. As to the first two theories of discrimination, he fails to demonstrate intentional discrimination by the Defendants or that the policy disallowing self-administered medication has any disparate impact on other SOTP participants. *See Tsombanidis v. W. Haven Fire Dep't,* 352 F.3d 565, 574–75 (2d Cir. 2003). Moreover, he fails to show that CNYPC's refusal to modify the medication distribution policy is unreasonable.[6] Thus,

---

[5] *See Fulton v Goord*, 591 F.3d 37 (2d Cir. 2009) (signaling that an inmate's disabled wife was excluded from the Inmate Visiting Program when the facility failed to consider whether they could modify its inmate transfer policy).

[6] The Court also notes that Plaintiff's tangential argument requires the Court to assume that if he had the ability to carry his inhaler he would not suffer from an asthma attack and therefore would not have the need to rest even on the days he felt the symptoms of an oncoming asthma attack, which would then allow him to attend the programs offered
(continued...)

the Plaintiff fails to establish a *prima facie* case.

In any event, Defendants assert that Plaintiff's request was denied "based on legitimate clinical and safety concerns associated with allowing residents to personally posses their medications." Defs.' Mem. of Law at p. 11. Defendants are particularly concerned that other resident patients may gain possession of and/or consume another patient's medication. Benham Decl. at ¶¶ 6-8. More significantly, the Defendants do not have discretion to carve out an exception for the Plaintiff. *See Id.* at ¶ 9 & Ex. A; Helmer Decl. at ¶ 4. OMH PC-610 prohibits inpatient residents, like the Plaintiff, to personally carry their medication. Instead, OMH PC-610, mandates State psychiatric facilities to distribute medication to the inpatient population by the unit dose system.[7] Benham Decl., Ex. A at p. 7. While the purpose of this policy is to alleviate safety and security concerns, OMH's policy is also focused on ensuring that patients are properly monitored and receiving "quality patient care." *Id.* at p. 1. Even construing the evidence most favorably to the Plaintiff, he fails to demonstrate that the neutral reasons proffered by the Defendants are pretextual. Thus, the Court recommends

---

[6](...continued)
at the facility. However, belying his postulations, even when Plaintiff had access to his inhaler while incarcerated at a New York State correctional facility, he still required hospitalization or extended stays in the infirmary due to asthma attacks. Ali Dep. at pp. 52 & 53.

[7] The unit dose system is a "method for drug distribution whereby individual packages of medication are dispensed for each inpatient. This supply of medication is contained in an individual drawer, labelled [sic] with the patient's name, which is divided into time slots corresponding to the times of medication administration." Benham Decl., Ex. A at p. 3.

granting Defendants' Motion for Summary Judgment with respect to Plaintiff's remaining ADA and Rehabilitation Act claims

### D. State Law Claims

Plaintiff also contends that the Defendants violated New York State Human Rights Law. Compl. at p. 7. However, since this Court recommends dismissal of Plaintiff's federal claims, we also recommend dismissal of the pendent state law claims pursuant to 28 U.S.C. § 1367, which authorizes a federal court to decline to exercise supplemental jurisdiction over a state claim if all of the claims over which the court had original jurisdiction were dismissed. 28 U.S.C. § 1367(c)(3); *see also Robinson v. Zurich N. Am. Ins. Co.*, 892 F. Supp. 2d 409, 438 (E.D.N.Y. 2012) (citing to 28 U.S.C. § 1367 and declining to exercise supplemental jurisdiction over the New York State Human Rights Law claim following its determination that the defendant was entitled to summary judgment on her related federal claims).

### E. Qualified Immunity

In light of the above analysis wherein this Court has assessed no constitutional violations occurred, it is unnecessary for us to consider the Defendants' qualified immunity defense. *Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity

for further inquiries concerning qualified immunity.").

## II. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 43) be **GRANTED** in its entirety and this action be **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: October 31, 2014
      Albany, New York

Randolph F. Treece
U.S. Magistrate Judge

*-15-*